[ PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11106

_____

DUDLEY TEEL,
as Personal Representative of the Estate of Susan Teel, deceased,

                                                Plaintiff-Appellant,

*versus*

DEPUTY SHERIFF JONATHAN LOZADA,
in his individual capacity,

                                                Defendant-Appellee,


SHERIFF ERIC FLOWERS,
in his official capacity as the Sheriff of Indian River County,

                                                Defendant-Appellee.


_____

2                    Opinion of the Court                    22-11106

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:18-cv-14367-DMM

_____

Before JORDAN, LAGOA, and MARCUS, Circuit Judges.

LAGOA, Circuit Judge:

Dr. Dudley Teel, Susan Teel's husband and the personal representative of Susan Teel's estate ("Estate"), appeals the district court's grant of summary judgment in Defendants' favor. This appeal stems from the events that led to Susan Teel's death after her attempted suicide at her home.

Dr. Teel—acting on behalf of Mrs. Teel's Estate—sued Deputy Jonathan Lozada and the Sheriff of Indian River County and alleged two claims under 42 U.S.C. § 1983: one for excessive force under the Fourth Amendment and another under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).[1] The district court initially granted summary judgment in favor of Deputy Lozada and the Sheriff, but we reversed in part and vacated in part in an earlier appeal. *Teel v. Lozada*, 826 F. App'x 880 (11th Cir. 2020) ("*Teel I*"). On remand, the district court granted summary judgment as to the Estate's *Monell* claim, but the excessive

_____

[1] The Estate also alleged two Florida wrongful death claims but later voluntarily dismissed them, so only the § 1983 claims remain relevant to this appeal.

force claim proceeded to trial.  At trial, the jury found that Deputy Lozada did not use excessive force in violation of the Fourth Amendment.  The Estate now appeals the grant of summary judgment on the *Monell* claim, two of the district court's jury instructions, and one of the district court's evidentiary rulings.

After careful review, and with the benefit of oral argument, we affirm as to all issues.

## I.     FACTUAL & PROCEDURAL BACKGROUND

On July 26, 2017, Susan Teel attempted suicide by cutting her wrists with a kitchen knife.  Shortly after the attempt, her husband, Dr. Teel, discovered his wife getting out of their bathtub, which was filled with blood and water.  Dr. Teel said that he was going to call 911, but Mrs. Teel responded, "No, you are not." "Yes, I am," he said.  "I am not going. . . . [Y]ou are not calling 911," she insisted.  As Dr. Teel tried to call 911, Mrs. Teel repeatedly batted at the phone to prevent him from calling for help.  Dr. Teel told his wife that he was going to text their daughter, Sara Gordon, who, in turn, called 911.

Deputies Lozada and Samuel Earman both responded to the 911 call, but Deputy Lozada arrived first.  While Dr. Teel was with his wife, he heard Deputy Lozada knock on the front door.  When Dr. Teel opened the door, Deputy Lozada observed blood on Dr. Teel's shirt.  Dr. Teel informed Deputy Lozada that his wife had been drinking, may have taken Ativan, had a knife, and had cut her wrists.

Before Deputy Lozada ascended the stairs in search of Mrs. Teel, Dr. Teel warned him to "be careful." Deputy Lozada intended to take Mrs. Teel into custody under Florida's Baker Act, *see* Fla. Stat. § 394.463, and felt a sense of urgency because he knew that Mrs. Teel was injured and needed assistance. Deputy Lozada also knew that he would need to secure Mrs. Teel and take the knife away from her before EMS could treat her wounds.

As Deputy Lozada proceeded up the stairway, he held his firearm in the ready position—tucking the firearm against his body with his left hand, covering it with his right hand, and pointing the muzzle down. When Deputy Lozada reached the top of the stairs, he did not see or hear anyone but noticed that the master bedroom light was on. He went to the master bedroom's doorway and observed Mrs. Teel lying face up on the bed. Because Deputy Lozada knew that Mrs. Teel was armed with a knife, he said, "Hey, Susan, sheriff's office, let me see your hands." Mrs. Teel arose, produced a thirteen-inch kitchen knife, raised the knife above her head, pointed the knife at Deputy Lozada, and said, "Fuck you, kill me." As Deputy Lozada announced over the radio that Mrs. Teel had a knife, she started walking toward him. Believing he was in grave danger, Deputy Lozada uncovered his firearm and said, "Don't come near me." Mrs. Teel kept approaching until she was within three to five feet of Deputy Lozada. Deputy Lozada fired one round and retreated, but Mrs. Teel kept coming toward him. Deputy Lozada fired again and continued walking backward, but she kept advancing. Finally, as Deputy Lozada reached the threshold of the bedroom, he fired a third shot, and Mrs. Teel collapsed.

Deputy Lozada immediately radioed for EMS, but Mrs. Teel died a few minutes later.

On September 10, 2018, the Estate brought a four-count complaint against Deputy Lozada, in his individual capacity, and Sheriff Loar, in his official capacity as the Sheriff of Indian River County (collectively, "Defendants").[2]   In Count 1, the Estate brought a § 1983 claim against Deputy Lozada alleging excessive force under the Fourth Amendment.   In Count 2, the Estate brought a § 1983 claim alleging that the Sheriff is liable under *Monell*, 436 U.S. 658, because he failed to properly train, discipline, and supervise Deputy Lozada.   And in Counts 3 and 4, the Estate brought  two state law claims for wrongful death, against the Sheriff and Lozada, respectively.   Because the Estate voluntarily dismissed the state law claims, only the § 1983 claims remain relevant to this appeal.

Initially, the district court granted summary judgment in favor of Deputy Lozada and the Sheriff, but we reversed in part and vacated in part in an earlier appeal.   *Teel I*, 826 F. App'x 880.   Following our remand, the district court granted summary judgment in favor of the Sheriff on the Estate's *Monell* claim.   To prove a *Monell* claim, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and

---

[2] Eric Flowers, in his official capacity, is now substituted as a party Defendant for Deryl Loar because Flowers is Loar's successor as the Sheriff of Indian River County.

(3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Before the first appeal, the district court granted summary judgment because it found that the Estate failed to demonstrate a genuine dispute as to whether Mrs. Teel's Fourth Amendment right to be free from excessive force was violated. After we reversed that ruling, the Sheriff moved for reconsideration of summary judgment based on the latter two *Monell* elements. The district court granted the motion, finding that the Estate failed to show that there was a genuine dispute as to whether the Sheriff's Office had a custom or policy of deliberate indifference toward Fourth Amendment rights.

The Estate's excessive force claim against Deputy Lozada proceeded to trial, and the jury found that Deputy Lozada did not use excessive force in violation of the Fourth Amendment. (**DE 196.**) Following the jury's verdict, the district court entered final judgment in favor of the Defendants and this timely appeal ensued.

## II.    STANDARDS OF REVIEW

"[W]e review jury instructions *de novo* to determine whether they misstate the law or mislead the jury." *Caradigm USA LLC v. PruittHealth, Inc.*, 964 F.3d 1259, 1277 n.12 (11th Cir. 2020) (quoting *Gowski v. Peake*, 682 F.3d 1299, 1310 (11th Cir. 2012)). As to the phrasing of jury instructions, we review for an abuse of discretion, recognizing that district courts have "wide discretion as to the style and wording employed" in its instructions. *Id.*; *accord Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999). "If the district court errs in its jury instructions, we will 'consider the jury

instructions as a whole' to determine whether the error was reversible and 'will not overturn a jury verdict because of an erroneous jury instruction unless there is also a showing of prejudice.'" *Caradigm*, 964 F.3d at 1277 n.12 (quoting *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1295–96 (11th Cir. 2000)); *accord MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1215 (11th Cir. 2021); *Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1233 (11th Cir. 2004).

If a party timely objects to the admissibility of certain evidence, we review the district court's evidentiary ruling for an abuse of discretion. *Rosenberg v. DVI Receivables XIV, LLC*, 818 F.3d 1283, 1292 (11th Cir. 2016). But we will not reverse where an error is harmless. 28 U.S.C. § 2111; Fed. R. Civ. P. 61. And if a party fails to timely object to the admissibility of evidence, we will deem the party's objection waived unless the district court plainly erred. *Watkins v. Bowden*, 105 F.3d 1344, 1352 n.16 (11th Cir. 1997).

"We review a district court's decision on summary judgment *de novo* and apply the same legal standard used by the district court, drawing all inferences in the light most favorable to the non-moving party and recognizing that summary judgment is appropriate only where there are no genuine issues of material fact." *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017). "We may affirm the judgment below on any ground supported by the record, regardless of whether it was relied on by the district court." *Statton v. Fla. Fed. Jud. Nominating Comm'n*, 959 F.3d 1061, 1065 (11th Cir. 2020).

### III.            ANALYSIS

On appeal, the Estate argues that the district court committed reversible error through its jury instructions, evidentiary ruling, and summary judgment order on the Estate's *Monell* claim.  We address these arguments in turn.

## A. Jury Instructions

The Estate appeals two of the district court's jury instructions: the *Graham* excessive force instruction and the Baker Act instruction.   In response, Deputy Lozada argues that Dr. Teel waived the objections he now advances on appeal and that the district court's *Graham* and Baker Act instructions were correct, or alternatively, not prejudicial.

At trial, the parties proposed different jury instructions on *Graham v. Connor*'s test for excessive force under the Fourth Amendment.  *See* 490 U.S. 386, 396 (1989).  The Estate proposed that the district court use this Court's pattern *Graham* instruction, which directs jurors to weigh "factors such as the *crime's* severity, whether a suspect poses an immediate violent threat to others, *whether the suspect resists or flees*, the need for application of force, the relationship between the need for force and the amount of force used, and the extent of the injury inflicted."  11th Cir. Civ. Pattern Jury Instr. 5.4 (emphases added).  Deputy Lozada proposed an alternative *Graham* instruction—one that was tailored to the use of force in medical emergencies, not criminal arrests.  Because attempted suicide is not a crime in Florida and because Mrs. Teel was not under arrest at the time of the shooting, the district court concluded that factors such as "the crime's severity" and "whether the

suspect resists or flees" would needlessly confuse the jury. To re-
duce confusion, the district court instructed the jury to consider
"the severity of the risk of harm" instead of "the crime's severity,"
and removed language instructing the jury to consider whether
"the suspect resists or flees."

With regard to the Baker Act instruction, Deputy Lozada re-
quested an instruction on the procedure for involuntary examina-
tion under Florida's Baker Act. The Estate contended that the dis-
trict court should modify Deputy Lozada's proposed instruction
because the instruction failed to provide a fulsome recitation of the
Baker Act's criteria. The district court rejected the Estate's conten-
tion and instead provided an instruction quoting one of the Baker
Act's criteria, *see* Fla. Stat. § 394.463(1)(b)(2), but omitting other
conditions for involuntary examination, *see id.* § 394.463(1)(a). We
turn first to Deputy Lozada's waiver argument.

Deputy Lozada argues that the Estate waived its objections
to the district court's *Graham* instruction and Baker Act instruction
by failing to clearly object to both instructions in a timely manner.
Specifically, Lozada claims that the Estate failed to renew its objec-
tion to the final version of the jury instructions on the last day of
trial. The Estate replies that it timely raised both objections and
that once the district court ruled, it did not need to reraise the ob-
jections again on the morning of closing arguments.

Federal Rule of Civil Procedure 51(c)(2) provides that an ob-
jection to jury instructions is timely if "a party objects at the op-
portunity provided under Rule 51(b)(2)." Federal Rule of Civil

Procedure 51(b)(2) provides that the district court "must give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered." "We interpret Rule 51 strictly, and require a party to object to a jury instruction or jury verdict form *prior* to jury deliberations in order to preserve the issue on appeal." *Farley*, 197 F.3d at 1329. "This requirement ensures that a trial judge has an opportunity to correct any error before a jury has begun its deliberations." *Id*. "There are two exceptions to this rule: 'first, where a party has made its position clear to the court previously and further objection would be futile; and second, where it is necessary to correct a fundamental error or prevent a miscarriage of justice.'" *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1018 (11th Cir. 2004) (quoting *Farley*, 197 F.3d at 1329 (internal quotation omitted)).

We hold that the Estate's objections to the *Graham* instruction and the Baker Act instruction were timely because the Estate timely objected under Rule 51(c)(2). The distinction between the Estate's and Deputy Lozada's separate *Graham* instructions is evident from the parties' proposed jury instructions. The Estate recommended adopting this Court's pattern *Graham* instruction while Deputy Lozada sought to introduce a variation of the *Graham* instruction and argued in support of that variation in both a memorandum and a trial brief. At the end of the first day of trial, the parties discussed their dispute over the *Graham* factors with the district court, and Dr. Teel clearly stated his objection to the modified *Graham* factors. Then, after the defense rested its case in chief, the district court held a charge conference and considered which

*Graham* instruction to adopt. The district court explained that the usual *Graham* instruction did not fit well because this case did not involve a traditional arrest for a crime. After trial, the district court issued a supplemental order explaining why its *Graham* instruction varied from our pattern *Graham* instruction. The supplemental order explained that the parties disputed the proper *Graham* instruction and never stated that the Estate's objection to the variation was untimely. Thus, the record shows that the Estate objected to the *Graham* instruction at the time provided under Rule 51(b)(2) and that the district court considered and resolved the issue in favor of Deputy Lozada before the case was submitted to the jury.

The Estate also objected to the district court's Baker Act instruction. At the charge conference, the Estate argued that the district court's Baker Act instruction failed to describe the complete criteria that an officer must account for before subjecting a person to involuntary examination. In particular, the Estate's counsel argued before the district court "that what your Honor is putting into that instruction is just a part of the involuntary examination statute, which . . . does not give a fulsome recitation of Florida law." This is the same argument that the Estate advances on appeal. We thus reject Deputy Lozada's waiver argument and now proceed to the merits.

### 1. The Graham *Instruction*

We turn first to the *Graham* jury instruction. Under *Graham v. Connor*, objectively unreasonable uses of force violate the Fourth Amendment. *See* 490 U.S. at 397. "Determining whether the force

used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The test for objective reasonableness "depends on the 'facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Helm v. Rainbow City*, 989 F.3d 1265, 1273 (11th Cir. 2021) (quoting *Graham*, 490 U.S. at 396). We have also highlighted other factors for consideration, including: "the need for application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted by the arresting officer." *Id.*

This Court's Pattern Jury Instruction 5.4 illustrates how district courts should generally instruct juries under the *Graham* test. At the time of the trial, Pattern Instruction 5.4 stated, in relevant part:

> When *making a lawful arrest*, an officer has the right to use reasonably necessary force to complete the arrest. Whether a specific use of force is excessive or unreasonable depends on factors such as the *crime's* severity, whether a suspect poses an immediate violent threat to others, *whether the suspect resists or flees*, the need for application of force, the relationship between the need for force and the amount of force used, and the extent of the injury inflicted.

11th Cir. Civ. Pattern Jury Instr. 5.4 (emphases added).  The Estate's proposed instruction mirrored this Court's pattern instruction. But Deputy Lozada proposed an instruction that deviated from the pattern instruction:

> When making a lawful detention, an officer has the right to use reasonably necessary force to complete the detention.  Whether a specific use of force is excessive or unreasonable depends on factors such as whether Susan Teel was incapable of making a rational decision under the circumstances that posed an immediate threat of serious bodily harm to Lozada, whether some degree of force was reasonably necessary to avoid the immediate threat, the nature of the injury inflicted and whether the force used was more than reasonably necessary under the circumstances known to Lozada.

Deputy Lozada's memorandum on the proposed instruction argued that the pattern instruction was inadequate because it was designed for cases involving uses of force when an officer makes a criminal arrest.  Here, Deputy Lozada was responding to a Baker Act call, not making a criminal arrest.  The district court agreed that, in a case not involving a criminal arrest, this Court's pattern instruction would confuse the jury.  But the district court declined to adopt Deputy Lozada's proposed instruction; instead, the district court slightly modified Pattern Instruction 5.4.  The district court's modified instruction stated:

> When *taking a person into custody pursuant to the Baker Act or making an arrest*, an officer has the right to use

reasonably necessary force. Whether a specific use of
force is excessive or unreasonable depends on factors
such as the severity *of the risk of harm*, whether the
subject poses an immediate violent threat *of force* to
others *or herself*, the need for the application of force,
the relationship between the need for the force and
the amount of force used, and the extent of the injury
inflicted.

(Emphasis added to note alterations to the pattern instruction).

On appeal, the Estate challenges these alterations, arguing
that the district court committed reversible error by removing ref-
erences to "the crime's severity" and "whether the suspect resists"
arrest. The Estate acknowledges that attempted suicide is not a
crime and that Deputy Lozada was not attempting to arrest Mrs.
Teel. But the Estate notes that in *Teel I*, we held that "'because
Florida does not recognize attempted suicide as a crime,'" the first
*Graham* factor "weighs in favor of Dr. Teel." *Teel I*, 826 F. App'x at
886 (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1157 (11th
Cir. 2005)).

We conclude that the Estate's challenge to the district
court's *Graham* instruction fails for several reasons. First, the *Gra-
ham* factors are flexible—the touchstone of the *Graham* test is "rea-
sonableness," which "requires" balancing of "the nature and qual-
ity of the intrusion on the individual's Fourth Amendment inter-
ests against the countervailing governmental interests at stake."
490 U.S. at 396 (quoting *Garner*, 471 U.S. at 8). Although *Graham*
enumerated factors that courts may consider, *see id.*, the Supreme

Court reaffirmed that "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Id.* (alteration adopted) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court recognized that pretrial detainees may advance claims of excessive force under the Due Process Clause of the Fourteenth Amendment. In *Kingsley*, the Court relied on *Graham* to articulate what constitutes a reasonable use of force. *Id.* at 397. Importantly here, *Kingsley* modified the "severity of the crime" factor and relabeled it, "the severity of the security problem at issue." *Id.* That adjustment makes more sense in the context of a pretrial detention. Further, the Supreme Court emphasized that the *Graham* factors are not "exclusive": "[w]e mention these factors only to *illustrate* the types of objective circumstances *potentially* relevant to a determination of excessive force." *Id.* (emphasis added).

The Sixth Circuit also recognized *Graham*'s flexibility in *Estate of Hill ex rel. Hill v. Miracle*, 853 F.3d 306 (6th Cir. 2017). In *Miracle*, a police officer tased an individual who was fighting paramedics but in need of urgent medical attention. *Id.* at 310–11. Because of the police officer's use of force, the individual became subdued and received the medical care that he needed. *Id.* at 311. The Sixth Circuit held that the district court erred by applying the traditional *Graham* factors and denying summary judgment to the officer. *Id.* at 313 ("The key problem is that the district court tried to apply the *Graham* factors to a completely different factual situation—a

medical emergency—where there was no crime, no resisting of ar-
rest, and no direct threat to the law-enforcement officer.").  The
court recognized an alternative test[3] for medical emergencies,
which was better aimed "towards the ultimate goal of determining
'whether the officers' actions are objectively reasonable in light of
the facts and circumstances confronting them.'"  *Id.* at 314 (quoting
*Graham*, 490 U.S. at 397).  And in *Helm v. Rainbow City*, we recog-
nized that *Estate of Hill* articulates "a test to determine whether
force is objectively reasonable under *Graham* when an officer is re-
sponding to a medical emergency, rather than making an arrest."
989 F.3d at 1273 (citing *Est. of Hill*, 853 F.3d at 313–14).

Here, the district court declined Deputy Lozada's invitation
to adopt *Estate of Hill*'s test word-for-word.  Instead, the district

---

[3] The Sixth Circuit's modified test provides:

Where a situation does not fit within the *Graham* test because
the person in question has not committed a crime, is not re-
sisting arrest, and is not directly threatening the officer, the
court should ask:

(1) Was the person experiencing a medical emergency that
rendered him incapable of making a rational decision under
circumstances that posed an immediate threat of serious harm
to himself or others?

(2) Was some degree of force reasonably necessary to amelio-
rate the immediate threat?

(3) Was the force used more than reasonably necessary under
the circumstances (i.e., was it excessive)?

*Est. of Hill*, 853 F.3d at 314.

court cited *Estate of Hill* for the correct proposition that the *Graham* test is flexible depending on the nature of the scenario that the officer encounters. The district court's slight alterations to the pattern instruction appropriately tailored the *Graham* instruction to the scenario that Deputy Lozada encountered.

Second, we conclude that the district court had discretion to adjust the language of the pattern instruction to ensure that it was understandable for the jury. In *Teel I*, we reviewed the district court's resolution of this case at the summary-judgment stage. *Teel I*, 826 F. App'x at 881. At the summary-judgment stage, the application of the *Graham* test was a question of law. *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). We concluded that there was a material dispute of fact regarding whether Deputy Lozada employed excessive force. *Teel I*, 826 F. App'x at 889. Following remand for a trial, the jury was not bound to conclude—as a factual matter—that Deputy Lozada's use of force was excessive. Indeed, the entire point of our prior holding was that a jury should decide whether the force was excessive. *See id.*

Because the jury must understand how to apply the *Graham* test, the district court modified the test's language to make it understandable for laypeople based on the facts presented at trial. This case involved a Baker Act call after an attempted suicide, not a criminal arrest, and thus the district court determined that factors relevant only to a criminal arrest would needlessly confuse the jury. The district court therefore altered our pattern instruction's language about "the crime's severity" and "whether the suspect resists

or flees" arrest. *Cf,* 11th Cir. Civ. Pattern Jury Instr. 5.4. We conclude that the district court had "wide discretion" to modify the instructions as long as the instructions "accurately reflect[ed] the law." *Conroy*, 375 F.3d at 1233. Here, the *Graham* instruction required jurors to consider "severity of the risk of harm," "whether the subject poses an immediate violent threat of force to others or herself," "the need for the application of force," "the relationship between the need for the force and the amount of force used," and "the extent of the injury inflicted." The instruction also emphasized that the *Graham* test required the jury to consider what a "reasonable and prudent law enforcement officer" would have done under the same circumstances. Because the *Graham* instruction was an appropriate summary of the law, we affirm as to this issue.

### 2. The Baker Act Instruction

We now turn to the Baker Act Instruction. At Deputy Lozada's request, the district court instructed the jury on the process for an involuntary mental examination under Florida's Baker Act. The Baker Act instruction provided:

> Florida's Mental Health Act, frequently known as the Baker Act, provides that people suffering from mental health issues may be subject to an involuntary examination if they meet certain criteria. One of those criteria is as follows: if "[t]here is a substantial likelihood that without care or treatment the person will cause bodily harm to himself or herself or others in the near future, as evidenced by recent behavior." There are several means by which an involuntary

examination may be initiated under the Baker Act, in-
cluding by action of law enforcement officers. The
Baker Act states that a law enforcement officer "shall
take a person who appears to meet the criteria for in-
voluntary examination into custody and deliver the
person or have him delivered to" a receiving facility.

Of the four criteria that the Baker Act lists for involuntary exami-
nation in Florida Statute § 394.463(1), this instruction informed the
jury about § 394.463(1)(b)(2) only. Although the instruction is clear
that it details only "one" of the criteria, it does not inform the jury
that some of the other criteria are necessary conditions preceding
involuntary examination. In full, § 394.463(1) of the Baker Act pro-
vides:

> (1) Criteria.—A person may be taken to a receiving facility
> for involuntary examination if there is reason to believe that
> the person has a mental illness and because of his or her
> mental illness:
>
> (a) 1. The person has refused voluntary examination after
> conscientious explanation and disclosure of the purpose of
> the examination; or
>
> 2. The person is unable to determine for himself or herself
> whether examination is necessary; *and*
>
> (b) 1. Without care or treatment, the person is likely to suffer
> from neglect or refuse to care for himself or herself; such
> neglect or refusal poses a real and present threat of substan-
> tial harm to his or her well-being; and it is not apparent that
> such harm may be avoided through the help of willing fam-
> ily members or friends or the provision of other services; or

2. There is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior.

Fla. Stat. § 394.463(1) (eff. July 1, 2017, to March 8, 2018) (emphasis added). The Estate objects to the district court's instruction because it was an incomplete description of the criteria for involuntary examination.

We agree that the language of the Baker Act instruction contained error. The text of the Baker Act provides that a person may become subject to involuntary examination only if both § 394.463(1)(a) "and" § 394.463(1)(b) are satisfied. *See id.* The district court, however, informed the jury of only one criterion for involuntary examination under § 394.463(1). And the district court did not instruct the jury that before an officer subjects a person to involuntary examination, the officer must determine that § 394.463(1)(b)(2) "and" one of the § 394.463(1)(a) criteria are fulfilled.

Although the jury instruction was erroneous, we conclude that this error is not reversible. We "will not disturb a jury's verdict unless the charge, taken as a whole, is erroneous *and* prejudicial." *SEC v. Yun*, 327 F.3d 1263, 1281 (11th Cir. 2003) (quoting *Mosher v. Speedstar Div. of AMCA Int'l Inc.*, 979 F.2d 823, 824 (11th Cir. 1992)) (emphasis added); *accord Watkins v. City of Montgomery*, 775 F.3d 1280, 1289–90 (11th Cir. 2014). The Estate argues that it desired a complete recitation of the Baker Act because it wanted to highlight that Deputy Lozada never provided Mrs. Teel with an opportunity

to refuse voluntary examination under § 394.463(1)(a)(1). However, that criterion is not necessary to subject an individual to involuntary examination. Because of the word "or" in § 394.463(1)(a), Deputy Lozada could have taken Mrs. Teel into custody without providing her an opportunity to refuse voluntary examination. An opportunity to refuse voluntary examination is thus unnecessary if the subject "is unable to determine for himself or herself whether examination is necessary." Fla. Stat. § 394.463(1)(a)(2). Here, the jury was presented with evidence showing that at the time of the incident, Mrs. Teel had just attempted suicide, was inebriated, was holding a knife, and had told Deputy Lozada to shoot her. We thus conclude that there was no prejudice to the Estate because, even if the jury had a fulsome explanation of the Baker Act, the jury would have readily concluded based on the evidence shown at trial that Deputy Lozada had ample justification to conclude that Mrs. Teel was "unable to determine for [] herself whether examination [wa]s necessary." *Id.*

More importantly, the Baker Act instruction did not prejudice the Estate because the Baker Act instruction was not critical to the issue before the jury. At bottom, the trial was about whether Deputy Lozada used excessive force in violation of the Fourth Amendment. The *Graham* test—not the Baker Act—is the touchstone for excessive force under the Fourth Amendment. *See Graham*, 490 U.S. 386. The Baker Act was relevant only insofar as it provided the jury with background and the criteria Deputy Lozada should have assessed in responding to a Baker Act call. Here the jury found that Deputy Lozada's use of deadly force was not

excessive given that Mrs. Teel was holding a knife, advanced toward him, and did not heed commands to stop. Thus, even though the Baker Act instruction was incomplete and therefore contained a misstatement, the misstatement did not prejudice the Estate such that a new trial is warranted. *See Caradigm*, 964 F.3d at 1277 n.12. Accordingly, we affirm as to this issue.

### B. The "Rough Patch" Evidence

We now turn to the "rough patch" evidentiary issue raised by the Estate. Both before and during trial, the district court excluded evidence and witness testimony about a "rough patch" that Deputy Lozada experienced in 2016 to 2017. During this so called "rough patch", there were seven instances when Deputy Lozada violated policies of the Indian River County Sheriff's Office. These violations ranged from a few traffic infractions to one instance when a suspect sustained a concussion while Deputy Lozada apprehended him at a gas station. And during a deposition, Deputy Lozada testified that, in 2016 and 2017, he was "young" and "irresponsible," which contributed to his mistakes.

Before trial, Deputy Lozada submitted a motion in limine to exclude evidence of other instances when he violated Sheriff's Office policies, and the district court granted his motion. The district court explained that the evidence was irrelevant and improper character evidence under Federal Rule of Evidence 404(b)(1). The district court also noted that because it granted summary judgment as to Dr. Teel's *Monell* claim, Deputy Lozada's prior mishaps were irrelevant to the trial of the excessive force claim.

Later, at trial, the Estate began eliciting testimony about Deputy Lozada's so-called "rough patch." Deputy Lozada objected, and the district court sustained the objection, noting its previous order on his motion in limine.

"[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (quoting *Scott v. United States*, 436 U.S. 128, 137–39 (1978)); *see also Helm*, 989 F.3d at 1273 ("Because determining reasonableness is an objective test, we do not consider an officer's intent or motivation."). Whether Deputy Lozada acted unreasonably in prior instances not involving the use of deadly force has little bearing on whether he used objectively reasonable force when he shot Mrs. Teel, and we conclude that the district court did not abuse its discretion.

The Estate argues that Deputy Lozada's prior misconduct is relevant because it goes to his "state of mind" when he shot Mrs. Teel. The Estate relies on *Kingsley*, 576 U.S. at 395, for the proposition that an officer's state of mind is relevant in an excessive force case. But *Kingsley* explained that an officer's intention is relevant only in a limited sense. True, the use of force must be an intentional act—in other words, Deputy Lozada must have intended to shoot Mrs. Teel. *See id.* Nonetheless, whether the use of force is reasonable is judged under an objective standard without regard to Deputy Lozada's "state of mind." *Id.* Because Deputy Lozada does

not dispute that he intentionally shot Mrs. Teel, his state of mind was not an issue at trial. The only question was "whether to interpret the defendant's physical acts in the world as involving force that was 'excessive,'" which is an objective question. *Id.*

Additionally, we conclude that the district court did not abuse its discretion in ruling that evidence of Deputy Lozada's "rough patch" constituted improper character evidence under Rule 404(b)(1). "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Although evidence of other bad acts is admissible if it goes to the defendant's "intent," Fed. R. Evid. 404(b)(2), such evidence is not probative here because *Graham* is "objective" and does not allow us to "consider an officer's intent or motivation." *Helm*, 989 F.3d at 1273 (citing *Graham*, 490 U.S. at 397). We therefore affirm on this issue.[4]

## C. Summary Judgment on the Estate's *Monell* Claim

---

[4] For the first time on appeal, the Estate also argues that the "rough patch" evidence was admissible under the curative admissibility doctrine. The Estate argues that Deputy Lozada's counsel opened the door to questioning about Deputy Lozada's prior mishaps by asking him about his training, experience, and how he responded to the 911 call at the Teel residence. We decline to address this argument. The Estate failed to raise this argument below and thus waived the right to raise this argument on appeal "absent plain error." *United States v. Culver*, 598 F.3d 740, 749 n.5 (11th Cir. 2010) (quoting *United States v. Sentovich*, 677 F.2d 834, 837 (11th Cir. 1982)). Indeed, the Estate neither addresses the waiver nor explains why the district court's ruling was "plain error."

Lastly, we address the district court's grant of summary judgment in favor of the Sheriff on the Estate's *Monell* claim. To impose liability under *Monell*, the Estate must prove three elements: "(1) that [Mrs. Teel's] constitutional rights were violated; (2) that the [Sheriff's Office] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *See McDowell*, 392 F.3d at 1289. The district court found that the Estate failed to demonstrate a genuine dispute of fact as to the second element.

At oral argument, however, the Estate conceded that if we allow the jury's verdict to stand, the *Monell* claim necessarily fails under the first element. This concession is correct in light of controlling precedent. "[N]either *Monell* . . . , nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1170–71 (11th Cir. 2009) ("Garczynski failed to show that any of the named individual police officers deprived him of his constitutional rights by using excessive or deadly force. Absent a constitutional violation, we need not explore whether PBSO's policies regarding crisis intervention training violated Garczynski's constitutional rights."); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("Since we have determined that Deputy Watson's conduct did not cause the Rooneys to suffer a constitutional deprivation, we need not inquire into Volusia

County's policy and custom relating to patrol vehicle operation and training.").

To be clear, when the district court granted summary judgment to the Sheriff after remand, it correctly refrained from granting judgment under the first element of *Monell*. At that time, we had determined on appeal that there was a material dispute of fact as to whether there was an underlying constitutional violation. *See Teel I*, 826 F. App'x at 889. But now, the jury has spoken, finding that Deputy Lozada did not violate the Fourth Amendment by shooting Mrs. Teel. Because there is no underlying constitutional violation, "[w]e may affirm the judgment below on any ground supported by the record." *Statton*, 959 F.3d at 1065. We thus affirm the district court's grant of summary judgment in favor of the Sheriff on the Estate's *Monell* claim based on the first element of *Monell*.

## IV.    CONCLUSION

For the reasons stated, we affirm the district court's jury instructions, its exclusion of the "rough patch" evidence, and its grant of summary judgment in favor of the Sheriff on the Estate's *Monell* claim.

**AFFIRMED.**